UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
**CLAUDIA RIVAS**, as Parent and Natural Guardian
of **S.C.,**[1] and **CLAUDIA RIVAS,**
Individually,                                                                     **25-cv-8830**

                     Plaintiff,                                              **COMPLAINT**

    -against-

**MELISSA AVILES-RAMOS**, in her official capacity
as Chancellor of the **NEW YORK CITY
DEPARTMENT OF EDUCATION**, and the **NEW
YORK CITY DEPARTMENT OF EDUCATION,**

                     Defendants.


-------------------------------------------------------------------- X

        Plaintiff **CLAUDIA RIVAS**, as Parent and Natural Guardian of **S.C.**[1], and **CLAUDIA RIVAS**, Individually, as and for her Complaint against Defendants **MELISSA AVILES-RAMOS**, in her official capacity as Chancellor of the **NEW YORK CITY DEPARTMENT OF EDUCATION**, and the **NEW YORK CITY DEPARTMENT OF EDUCATION** (collectively "DOE"), alleges the following:

## PRELIMINARY STATEMENT

1.    This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq*. ("IDEA"), to ensure S.C.'s right to a free appropriate public education ("FAPE").

---

[1] Although the full name of the Parent is used here, consistent with the federal Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) and its regulations, Plaintiff's Counsel is using the initials of the Student to protect that Student's privacy.

1

2. The IDEA offers federal funds to States for a commitment to furnish a FAPE to all children with physical and/or intellectual disabilities. *See* 20 U.S.C. § 1400(3)(A)(i) (listing covered disabilities).

3. As defined in the IDEA, a FAPE includes special education and related services instruction tailored to meet a child's unique needs and supportive services sufficient to allow a child to benefit from the instruction. *See* 20 U.S.C. § 1401(26) and (29).

4. An eligible child acquires a substantive right to such an education once a State accepts the IDEA's financial assistance from the Federal Government.

5. Upon information and belief, Defendants apply for and receive IDEA Part B funds each year.

6. Under the IDEA, an Individualized Education Program ("IEP") is the primary vehicle for providing a child with a FAPE.

7. State Review Officer Carol H. Hauge ("SRO Hauge") issued SRO Decision No. 24-632 relative to IHO Case No. 277083 on June 26, 2025.

8. Plaintiff seeks *de novo* review of SRO Decision No. 24–632 issued by SRO Hauge on June 26, 2025.

9. Plaintiff seeks an Order reversing the part of SRO Decision No. 24-632 which dismissed the Parent's appeal and erroneously found that although the Impartial Hearing Officer erred in finding that the DOE offered S.C. a FAPE for the 2024-2025 extended school year ("ESY"), the parent failed to establish the appropriateness of the student's unilateral placement at iBRAIN.

10. Plaintiff seeks an Order holding that (1) the DOE failed to offer the student a FAPE for the 2024-2025 ESY, (2) iBRAIN was an appropriate placement for the 2024-2025 ESY, (3) equitable considerations weigh in favor of the Parent's requested relief for

reimbursement for the private placement including transportation and nursing services.

11. In a Findings of Fact and Decision ("FOFD") dated November 14, 2024, IHO Nancy Tse erroneously found that the DOE offered S.C. a FAPE for the 2024–2025 ESY and the Student's placement at iBRAIN was inappropriate; IHO Tse did not address the equities relative to the Parent's claims.

12. On December 24, 2024, Parent submitted a Request for Review stating that IHO Tse's FOFD should be reversed because (1) the DOE failed to offer the Student a FAPE for the 2024-2025 school year, (2) the Student's unilateral placement at iBRAIN was appropriate, and (3) equitable considerations weighed in favor of the Parent's requested relief.

13. On June 26, 2025, SRO Hauge issued an SRO Decision finding that the Request for Review must be dismissed because even though DOE did not offer the Student a FAPE for the 2024-2025 school year, the Parent did not establish that iBRAIN was an appropriate placement.

14. Although SRO Hauge correctly reversed the IHO and held that the DOE provided S.C. a FAPE, SRO Hauge erroneously determined that iBRAIN was not an appropriate placement for the Student and failed to address whether equitable considerations supported Plaintiff's request for relief of reimbursement.

15. Plaintiff is an aggrieved party because SRO Hauge issued adverse findings and rulings in SRO Decision No. 24–632.

16. Plaintiff seeks funding and direct payment to iBRAIN for her appropriate unilateral placement thereat, including transportation costs and nursing services, and related costs, in pursuant to the terms of the provider contracts.

17. DOE's offered alternatives to the Student's placement at iBRAIN that were insufficient to provide the same general level and type of services that the Student was already receiving.

18. This Complaint is filed under the IDEA, New York State's implementing laws and regulations, 8 N.Y.C.R.R. § 200 *et seq.*, and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 (McKinney), *et seq.*, and applicable case law and public policy.

## JURISDICTION AND VENUE

19. This case arises under a federal statute, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, and United States Department of Education regulations promulgated under authority granted by statute. 34 C.F.R. Part 300.

20. Jurisdiction of the United States District Court for the Southern District of New York is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for any party "aggrieved by the findings and decision" of an Impartial Due Process Proceeding.

21. Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

22. To the extent, if any, that this case involves questions of special education rights under New York State law, the Court has supplemental jurisdiction under 28 U.S.C. § 1367.

23. This Court may order declaratory and injunctive relief under § 2201 and § 2202.

24. The Court also has pendent jurisdiction to adjudicate any state claims arising from the same acts as the federal claims asserted here under 28 U.S.C. § 1367.

25. Venue is proper in the United States District Court for the Southern District of New York, as authorized by 28 U.S.C. § 1391.

26. If successful, Plaintiff seeks reasonable attorneys' fees as part of the costs that may be

awarded to the parent of a child with a disability as a "prevailing party" in the underlying administrative proceedings conducted under the IDEA. 20 U.S.C. § 1415(i)(B)(I); *see also* 34 C.F.R. § 300.517(a)(l)(i).

## THE PARTIES

27. Plaintiff Claudia Rivas is the Parent and Natural Guardian of S.C.

28. Plaintiff's child, S.C., was a minor during the 2024-2025 ESY.

29. S.C. is a child with a disability, as defined by 20 U.S.C. § 1401(3).

30. S.C. is entitled to receive a FAPE and related services from Defendant DOE.

31. Plaintiff and her child, S.C., lived in the City of New York at all relevant times here.

32. S.C. is not expressly named within this Complaint because of privacy provisions in the IDEA and the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232, *et seq.*

33. Defendant New York City Department of Education is and was, at all material times, a corporate body created under Article 52 of the New York State Education Law, CLS Educ. Law § 2550 *et seq.* that manages and controls the educational affairs of the New York City Public Schools.

34. Defendant New York City Department of Education is the local educational authority ("LEA") defined by 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing S.C. with a FAPE.

35. New York State and DOE have established policies and procedures, both written and informal, concerning the IDEA's implementation.

36. DOE receives federal funding under the IDEA. 20 U.S.C. § 1412.

37. Upon information and belief, DOE received IDEA funds that were "earmarked" for S.C.'s education during the 2024-2025 ESY.

38. Because DOE receives funding under the IDEA, it must comply with the statute's provisions. 20 U.S.C. § 1412.

39. Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

40. The New York City Department of Education's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, N.Y. 11201.

41. Plaintiff resides in Defendants' school district.

42. DOE is responsible for providing a FAPE to all students with disabilities, including S.C., who live in the Defendants' school district under statutory rights arising under IDEA, its implementing regulations, and the applicable Part 200 Regulations implemented by New York State, to the extent such regulations are not inconsistent with the IDEA.

## FACTUAL ALLEGATIONS

43. Plaintiff brings this action under the IDEA to affirm that Plaintiff is entitled to funding as direct payment to S.C.'s private school for his appropriate unilateral placement thereat, including special transportation services, supplemental services, 1:1 nursing services, and any other related services.

44. Congress enacted the IDEA to ensure that students with disabilities, such as S.C., have meaningful access to a free appropriate public education. States that participate in the IDEA receive substantial federal funds for their agreement to provide a FAPE to all children with disabilities in the State and to comply with the IDEA's procedural and substantive mandates.

45. Each year, the State Education Agency ("SEA") issues IDEA Part B funds to those Local Education Agencies ("LEAs") that have provided assurances under IDEA.

46. New York State has chosen to participate in the IDEA framework and has established procedures for providing specific education services to students with disabilities, set forth in N.Y. Educ. Law § 4401, *et seq.*

47. Upon information and belief, the New York City Department of Education receives money under IDEA Part B based on the "child-count" method, which allows the LEA to claim a specific amount of money per student with a qualifying disability.

48. Upon information and belief, the DOE has received IDEA Part B funds earmarked for S.C.'s education relative to the 2024–2025 extended school year.

49. The IDEA explicitly requires the DOE to fund S.C.'s education.

50. The DOE has not funded S.C.'s education at iBRAIN for the 2024–2025 ESY, failing to adhere to the statutory requirements of the IDEA.

51. S.C. suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial behavior, physical functions, information processing and speech.

52. S.C. has medical diagnoses that include Cystic Encephalomalacia, global CNS injury, seizure disorder, hypoxic-ischemic encephalopathy, cerebral palsy, optic atrophy, cortical visual impairment, exotropia, developmental delay, feeding problems, gastroesophageal reflux disease, constipation, asthma, adenoid hypertrophy, scoliosis, and congenital subluxation of hip unilateral, and shoulder dystocia.

53. These impairments have adversely affected S.C.'s educational abilities and performance.

54. S.C. has highly intensive management needs, requiring a high degree of individualized attention and intervention throughout the school day.

55. S.C. requires a small, highly structured classroom in air-conditioned environment, when needed, offering an educational program delivered via a 1:1 direct instruction model, as well as a modified environment reducing visual and sound; a full-time 1:1 paraprofessional during the school day to support his healthcare needs, to ensure that he is able to attend and participate in his educational program, and to assist with all school activities and activities of daily living; and a full-time 1:1 nurse to support his medical/health needs, to readjust and reposition S.C. as needed, including but not limited to preventing aspiration during feeding, ensuring he receives the necessary asthma medication and treatment, ensuring his safety during physical activity, observing fall and seizure precautions activity both during school and while in transit to and from school.

56. Furthermore, he requires wheelchair accessible transportation in an air-conditioned vehicle with access to and from school with limited travel time.

57. S.C. also requires an extensive regimen of related services, including Occupational Therapy ("OT"), Physical Therapy ("PT"), Speech and Language Therapy ("SL"), Vision Education Services ("VES"), and Assistive Technology ("AT"), in order to benefit from special education instruction, along with monthly Parent Counseling and Training ("PCT").

58. Because of the extensive level of services that S.C. requires, it is necessary for S.C. to attend a program which operates on an extended school day within an ESY to prevent regression.

59. S.C. began attending iBRAIN during the 2018-2019 ESY.

60. Plaintiff re-enrolled S.C. at iBRAIN for the 2024-2025 ESY.

61. At iBRAIN, S.C. received and continues to receive an appropriate educational program that addresses all of S.C.'s health and educational needs.

62. S.C. currently attends a 6:1:1 class and receives the following services: OT: 5 times per week for 60 minutes (individually); PT: 5 times per week for 60 minutes (individually); SL: 5 times per week for 60 minutes (individually); VES: 3 times per week for 60 minutes (individually); AT: once per week for 60 minutes; and, PCT: once per week for 60 minutes.

63. At iBRAIN, S.C. also utilizes an Assistive Technology (AT) device.

64. At iBRAIN, S.C. receives support from a 1:1 paraprofessional for all activities of daily living, for healthcare and safety needs, for two-person transfers, and in his academic and related services.

65. At iBRAIN, S.C. also receives support from a 1:1 nurse to manage his highly complex medical and health needs, administer medication, prevent aspiration, and assist with two-person transfers.

66. S.C. receives special transportation services, which include: a 1:1 travel nurse, a lift bus/wheelchair ramp, air conditioning, oxygen, a ventilator, and limited travel time of 90 minutes.

### 2024-2025 School Year

67. On May 7, 2024, the DOE convened a Committee on Special Education ("CSE") to develop S.C.'s 2024-2025 IEP.

68. The CSE recommended a 12:1+(3:1) class in a District 75 public school.

69. At the IEP meeting, the CSE recommended the following services based on the iBRAIN evaluations and educational plan: OT: 5 times per week for 60 minutes (individually); PT: 5 times per week for 60 minutes (individually); SL: 5 times per week for 60 minutes (individually); VES: 3 times per week for 60 minutes (individually); AT: once per week for 60 minutes; and, PCT: once per week for 60 minutes. The CSE also recommended an

AT device, as well as a 1:1 paraprofessional, but it did not follow iBRAIN's recommendation for a 1:1 nurse.

70. For transportation services/accommodations, the CSE again deviated from the iBRAIN educational plan and recommended: curb transportation, a 1:1 travel nurse, a lift bus, a regular-sized wheelchair, climate control, and limited travel time for an unspecified duration.

71. Parent expressed, and S.C.'s teachers and service providers agreed, that a 12:1+(3:1) class in a District 75 public school program would be too large and would fail to address his highly intensive management needs.

72. The class size recommended by DOE is inappropriate for S.C., as he is a student who requires a highly intensive educational environment with significant deficits in cognitive, adaptive, communicative, and physical development, and requires a high degree of individualized attention to meet daily care needs, and therefore requires the support of a 1:1 paraprofessional. This level of support is crucial for S.C.'s educational success.

73. New York State law specifically mandates that class sizes for students with highly intensive needs, like S.C., who require a high degree of individualized attention, must not exceed six (6) students in a special class.

74. Additionally, such classes must have one or more supplementary personnel assigned during instructional periods. *See* N.Y. Comp. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) – Continuum of Services.

75. The DOE's approach, which considers options like a 6:1+1, 8:1+1, or 12:1+1 class, fails to align with the specific needs of S.C. under the relevant regulations. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) and (b) are not interchangeable, and the suggested options do not meet the statutory requirements for students with S.C.'s level of need.

10

76. The Parent explicitly addressed the need for a more restrictive class size and an extended school day in the DPC submitted on July 2, 2024.

77. In the DPC, the Parent also addressed the DOE's failure to provide a 1:1 nurse which was crucial for S.C., who is medically fragile.

78. The DOE failed to recommend appropriate special transportation accommodations, specifically neglecting to mandate air conditioning and limited travel time.

79. S.C.'s private school noted that he requires a very specialized environment for safety reasons, as his medical needs warrant a placement with peers and staff appropriately trained for his unique needs, including his respiratory issues.

80. S.C. requires services to be provided on both the 'push-in/pull-out' basis to allow for generalization of skills across all environments.

81. The 2024-2025 IEP envisions these services being delivered in an exclusively "push-in" model, where service providers are integrated into the student's regular classroom setting.

82. The "push-in" model would require that S.C.'s related services be provided within the context of his classroom, which simply cannot be done with the proposed service hours and the nature of S.C.'s needs.

83. The amount of time required to deliver these services—19 hours per week—far exceeds what can reasonably be provided in a regular school day, especially if those services are to be delivered without removing the student from critical educational time.

84. The lack of an extended school day exacerbates the insufficiency of time to provide services. Without additional time for the necessary services, S.C. would not only lose out on necessary related services, but he would also face significant disruption to his overall educational experience.

85. DOE's recommended placement fails to meet S.C.'s needs.

86. DOE's offered alternatives do not provide the same general level and type of services that S.C. was receiving.

87. On June 10, 2024, Parent informed the DOE of her decision to re-enroll S.C. at iBRAIN for the 2024-2025 school year via a Ten-Day Notice ("TDN") and requested DOE funding for S.C.'s program at iBRAIN.

88. On June 14, 2024, DOE issued a Prior Written Notice ("PWN") package and a School Location Letter ("SLL") for the 24/25 ESY. Parent remained willing to investigate a placement that the DOE offered, but given the circumstances and S.C.'s conditions, Parent had no choice but to evaluate alternative options.

89. S.C. requires special education and related services to accommodate his disabilities so that he can receive a FAPE.

90. S.C. attended iBRAIN during the 2024–2025 ESY.

91. iBRAIN employs specialized teachers, nurses, and therapists to provide extended school day and extended school year care and education to children with brain injuries or brain-based disorders.

92. iBRAIN is a New York City-based private school dedicated to serving children who have suffered from brain injuries or have brain-based disorders.

## Underlying Proceedings

93. On July 2, 2024, Plaintiff filed a DPC with the DOE, initiating an administrative Due Process Proceeding to secure funding for placement at iBRAIN for the 2024-2025 ESY and other relief under the IDEA. 20 U.S.C. § 1415(f); 8 N.Y.C.R.R. § 200.5(i).

94. The DPC was assigned IHO Case No. 277083.

95. In the July 2, 2024, DPC, Plaintiff alleged, among other things, that DOE did not provide S.C. with a FAPE.

96. Plaintiff alleged that DOE did not provide a program and placement uniquely tailored to meet S.C.'s needs for the 2024-2025 extended school year.

97. Plaintiff also alleged that iBRAIN was an appropriate unilateral placement for S.C. and that equities favored an award of total funding for S.C.'s placement at iBRAIN, including tuition, related services, 1:1 nursing services, and special transportation. 20 U.S.C. § 1415(i) *et seq.*; N.Y.C.R.R. § 200.5(i).[2]

98. Specifically, the DPC alleged:

    a. DOE failed to mandate an appropriate class size for S.C. in the least restrictive environment;

    b. DOE failed to recommend an appropriate public school location for the 2024-2025 ESY;

    c. DOE failed to recommend appropriate related services and supports to prevent regression and confer meaningful benefit to S.C.;

    d. DOE failed to recommend a 1:1 nurse for S.C.'s complex medical needs; and

    e. DOE failed to mandate appropriate special education transportation services and accommodations.

99. On November 14, 2024, IHO Tse issued a FOFD in IHO Case No. 277083. IHO Tse erroneously found that the DOE offered S.C. a FAPE for the 2024–2025 ESY and the Student's placement at iBRAIN was inappropriate; IHO Tse did not address the equities relative to the Parent's claims.

---

[2] A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student, pursuant to the *Burlington/Carter* test, if the services offered by the board of education were inadequate or inappropriate ("Prong I"); the services selected by the parents were appropriate ("Prong II"); and equitable considerations support the parents' claim ("Prong III"); *See Florence Cty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369- 70, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985).

100. IHO Tse denied Plaintiff's request for funding for S.C.'s attendance at iBRAIN during the 2024-2025 ESY.

101. By Request for Review ("RFR") on or about December 24, 2024, Plaintiff appealed IHO Tse's FOFD to the New York State Education Department's Office of State Review.

102. Parent sought an order reversing IHO Tse's FOFD in its entirety and finding (1) that the DOE failed to sustain its burden that it offered a FAPE to S.C.; (2) that the Parent sustained her burden that the placement for S.C. at iBRAIN was appropriate; (3) that the equities support full public funding of the same.

103. On June 26, 2025, SRO Hauge issued SRO Decision No. 24-632 relative to Plaintiff's appeal.

104. SRO Hauge correctly reversed IHO Tse's finding that DOE offered S.C. a FAPE for the 2024-2025 ESY.

105. SRO Hauge erred in holding that the parent failed to establish that iBRAIN was an appropriate unilateral placement to implement S.C.'s 2024-2025 IEP.

106. SRO Hauge further erred in declining to address the issues of whether the equities favored the Plaintiff.

107. SRO Hauge erred by failing to find that iBRAIN was an appropriate placement and ordering that total funding be paid directly to iBRAIN for the cost of S.C.'s tuition and related services, including nursing services and special transportation services, pursuant to the terms of the provider contracts for the 2024- 2025 ESY.

108. The instant federal action is an appeal of SRO Decision No. 24-632.

109. SRO Decision No. 24-632 is contrary to the evidence and the law.

110. As a result, S.C. has been denied a FAPE by DOE and due process by the SRO.

111. SRO Hauge's decision in SRO Decision No. 24-632 is defective because it relies on a mistaken application of the IDEA, relevant caselaw, New York State Education Law, and mistaken findings.

112. Such defective decision has a disparate impact on disabled students entitled to funding under the IDEA, as it favors those who can afford private school tuition in the first instance and wait for reimbursement.

113. Under the SRO's mistaken holding, DOE evades its responsibilities under the IDEA and the New York State Constitution to provide S.C. a FAPE and receives a windfall—IDEA Part B funds—those funds earmarked for S.C.

## AS AND FOR A FIRST CAUSE OF ACTION

### SRO Decision 24-632 Regarding Prongs II and III Should Be Reversed

114. Plaintiff repeats, reiterates, and reaffirms each allegation above as if more fully set forth here.

115. SRO Hauge did not discharge her duties properly as required by the IDEA, 20 U.S.C. § 1401 *et seq.*, the federal regulations promulgated under them, 34 C.F.R. Part 300, Article 89 of the New York Education Law, and the Regulations of the Commissioner of Education, Part 200.

116. SRO Decision No. 24-632 regarding appropriateness of placement at iBRAIN and full reimbursement concerning the 2024-2025 ESY for S.C. should be reversed for several reasons including, but not limited to, the following:

   a. SRO Hauge erroneously failed to find that iBRAIN was an appropriate unilateral placement; and

   b. SRO Hauge erroneously failed to find that the equities favored the Plaintiff; and

    c.  SRO Hauge erroneously denied Plaintiff an award of full funding to S.C.'s private school for the 2024-2025 ESY.

117. Specifically, the class size recommended by DOE is inappropriate for S.C., as he is a student who requires a highly intensive educational environment, presents with significant deficits in cognitive, adaptive, communicative, and physical development, and requires a high degree of individualized attention to meet daily care needs, and therefore requires the support of a 1:1 paraprofessional. This level of support is crucial for S.C.'s educational success.

118. New York State law specifically mandates that class sizes for students with highly intensive needs, like S.C., who require a high degree of individualized attention, must not exceed six (6) students in a special class.

119. Additionally, such classes must have one or more supplementary personnel assigned during instructional periods. *See* N.Y. Comp. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) – Continuum of Services.

120. The DOE's approach, which considers options like a 6:1+1, 8:1+1, or 12:1+1 class, fails to align with the specific needs of S.C. under the relevant regulations. Codes R. & Regs. Tit. 8 § 200.6 (h)(4)(ii)(a) and (b) are not interchangeable, and the suggested options do not meet the statutory requirements for students with S.C.'s level of need.

121. The Parent explicitly addressed the need for a more restrictive class size and an extended school day in the DPC.

122. In the DPC, the Parent also addressed the DOE's failure to provide a 1:1 nurse which was crucial for S.C., who is medically fragile.

123. The DOE failed to recommend appropriate special transportation accommodations,

specifically neglecting to mandate air conditioning and limited travel time.

124. Based on the above, Plaintiff's rights, and those of her disabled child S.C., were violated under the IDEA, 20 U.S.C. § 1401, *et seq.*, the federal regulations promulgated thereunder, 34 C.F.R. Part 300, Article 89 of the New York State Education Law, and the Regulations of the Commissioner, Part 200.

125. Defendants' actions have caused Plaintiff and S.C. to suffer damages.

126. Plaintiff is entitled to all appropriate relief under IDEA, including the specific remedy of direct funding to S.C.'s private educational provider, iBRAIN, with ancillary and necessary fees, including attorneys' fees, for S.C.'s 2024-2025 ESY, to the extent not already paid.

127. Plaintiff is entitled to direct funding for tuition and related services under the IDEA for S.C.'s placement at iBRAIN during the 2024-2025 ESY, for the reasons set forth above, including, but not limited to, the following:

   a. Defendants failed to offer or provide S.C. with a FAPE for the 2024-2025 ESY;

   b. iBRAIN was an appropriate unilateral placement for S.C. during the 2024-2025 ESY; and

   c. Equities favored total funding for Plaintiff and S.C. because DOE failed to provide S.C. with a FAPE through no fault of Plaintiff, and the cost of iBRAIN during the 2024-2025 ESY was reasonable.

## AS AND FOR A SECOND CAUSE OF ACTION

126  Plaintiff repeats and realleges paragraphs 1 through 111 as if set forth more fully here.

127  In any action or proceeding brought under the IDEA, a Court may award reasonable attorneys' fees as part of the costs to the "prevailing party," who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(I); 34 C.F.R. § 300.517(a)(1)(i).

128  Plaintiff CLAUDIA RIVAS is the parent of S.C, a child with disabilities, who prevailed in

IHO Case No. 277083 for the 2024–2025 extended school year.

129   The SRO issued a decision on June 26, 2025, finding that the DOE had failed to provide S.C. a FAPE, based on, *inter alia*, the DOE's failure to provide S.C. with a 1:1 nurse during school.

130   The DOE did not appeal the FOFD to the Office of State Review, and the time to do so has expired.

131   Plaintiff is the prevailing party in her administrative proceedings under the IDEA. The SRO decision altered the legal relationship between Plaintiff and the DOE.

132   At all relevant times, Plaintiff was, and has been, represented by the Liberty & Freedom Legal Group, Ltd., a law firm experienced in representing families of students with disabilities in proceedings under IDEA.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that the Court:

(a)   Conduct an independent review of the administrative record;

(b)   Reverse SRO Decision No. 24–632, dated June 26, 2025, to the extent that it held that Plaintiff's request for review must be dismissed because the Plaintiff failed to establish that the unilateral placement was appropriate for the 2024-2025 school year;

(c)   Issue an Order declaring that iBRAIN was an appropriate unilateral placement for S.C. during the 2024-2025 ESY;

(d)   Issue an Order declaring that the equities favor Plaintiff's request for total funding to S.C.'s private school placement (iBRAIN) for the cost of S.C.'s tuition, related services, nursing services, and special transportation services, including any late fees and interest accrued, pursuant to the terms of the providers' contracts for the 2024- 2025 SY;

(e)   Order Defendants to directly fund any cost remaining for S.C.'s private school tuition and related services for the 2024-2025 ESY, including S.C.'s transportation and nursing services and any related late fees and interest accrued, to the extent not already paid;

(f)     Declare Plaintiff to be a prevailing party for IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517(a)(1)(i);

(g)     Direct Defendants to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees for bringing and maintaining this action.

(h)     In the alternative to any of the above relief, Plaintiff requests to be heard and present additional evidence under 20 U.S.C. § 1415(i)(2)(C); and

(i)     Grant such other, further, and different relief as this Court deems just, proper, and equitable.

Dated: October 24, 2025
       New York, New York

                              Respectfully submitted,

                              Liberty & Freedom Legal Group
                              *Attorneys for Plaintiffs*

                              By: */s/ Nicole Lancia*
                              Nicole Lancia, Esq.

                              105 East 34th Street, #190
                              New York, NY 10016
                              (646) 850-5035
                              nicole@pabilaw.org